HAYWIN TEXTILE PRODUCTS, INC., Plaintiff,

v.

INTERNATIONAL FINANCE INVESTMENT AND COMMERCE BANK LIMITED, Defendant.

No. 00 CIV. 8633(RLC).

United States District Court, S.D. New York.

June 11, 2001.

Foreht Last Landau Miller & Katz LLP, New York City (Richard S. Last, of counsel), for Plaintiff.

Martin L. Brothers, New York City, (Martin L. Brothers, of counsel), for Defendant.

## OPINION

ROBERT L. CARTER, District Judge.

On December 19, 2000, defendant International Finance Investment and Commerce Bank ("IFIC") filed a motion to dismiss the complaint filed by plaintiff Haywin Textile Products, Inc. ("Haywin") (1) pursuant to Rule 12(b)(6), F.R. Civ. P., for failure to state a cause of action upon which relief may be granted, and (2) for forum non conveniens. It also asked the court to revoke a temporary restraining order issued by the Supreme Court of the State of New York. In an April 9, 2001 opinion, the court denied the motion for forum non conveniens dismissal, but reserved judgment on the Rule 12(b)(6) dismissal and the temporary restraining or-

der pending further submissions from the parties. *Haywin Textile Products, Inc. v. Internat'l Finance Investment and Commerce Bank, Ltd.*, 137 F.Supp.2d 431 (S.D.N.Y.2001) (Carter, J.).

The relevant facts of this case have been discussed in the previous opinion of the court, familiarity with which is presumed. *Id.* In support of its Rule 12(b)(6) motion and its motion to quash the temporary restraining order, IFIC argues that Bangladeshi law should control this case and that under that law, the plaintiff cannot prevail. Haywin responds that New York law should apply, and under New York law, it enjoys a likelihood of success on the merits.

Haywin claims that it is owed money by a corporation named Azmat Bangladesh Ltd. ("Azmat"). Haywin also alleges that IFIC entered into a "Deed of Agreement" whereby all Azmat shares were transferred to IFIC, and IFIC became the new owner of Azmat, assuming full responsibility for all of its debts and obligations. Haywin contends that it is a third party beneficiary to this agreement and/or that IFIC is a successor-in-interest to Azmat.

When an issue of foreign law has been raised, the court is permitted to make a determination of that law which determination is treated as a ruling on a question of law. *See* Rule 44.1, F.R. Civ. P., *Haywin*, 137 F.Supp.2d at 434. In its original motion to dismiss, IFIC included the affidavit of Dr. M. Zahir, a purported expert on Bangladeshi law. The court declined to rely upon that affidavit, however, because it was not accompanied by copies of the precedent cited by Zahir. *Id.* at 435. IFIC has now supplied a supplemental affidavit from Zahir, along with copies of the case law to which he refers. Haywin has responded with an affidavit from its own expert on Bangladeshi law, Md. Moksudur Rahman.

■ In resolving choice of law questions in New York, the court must first determine whether there is, in fact, a conflict between the laws of the two jurisdictions. *See Matter of Allstate Ins. Co. and Stolarz*, 81 N.Y.2d 219, 597 N.Y.S.2d 904, 905, 613 N.E.2d 936 (1993). New York courts recognize, in certain circumstances, the right of a nonparty to a contract to bring a claim relying upon that contract as a third party beneficiary. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc. et al.*, 66 N.Y.2d 38, 495 N.Y.S.2d 1, 4–5, 485 N.E.2d 208 (1985). It is evident that Bangladeshi courts do not recognize such a right.

In one of the apparently few Bangladeshi cases addressing the issue, an appellate court ruled that Bangladeshi law generally does not recognize third party beneficiaries. In *Trang Ice and Cold Storage Co., Ltd. v. Amin Fish Farm and Industries, Ltd., et al.*, 46 DLR 42 (1994), the plaintiff, a shareholder in a fishing company, sued the defendant which had allegedly contracted to provide trawlers to the company. The court ruled that the plaintiff could not sue to enforce the contract because it was not a party to the contract. "If there is any grievance it would be a grievance of the … company and not of the plaintiff … and as such the present suit is not maintainable …. Terms of the contract can be enforced only by the contracting parties and not by third party [*sic*]." *Id.* at 42, 495 N.Y.S.2d 1, 485 N.E.2d 208.

■ Understanding that there is, in fact, a difference between the laws of Bangladesh and New York, the court must determine which law is applicable. Under New York choice of law rules for contract disputes, the court must look to the "grouping of contacts," such as the place of contracting and performance, the domicile

of the parties, etc., to determine which forum has the greater interest in having its law applied. *See Auten v. Auten,* 308 N.Y. 155, 161, 124 N.E.2d 99 (1954). In this case, the contract at issue was negotiated and executed in Bangladesh between Bangladeshi parties and was intended to be performed in that country. The contact with New York is tangential: the plaintiff (a nonparty to the contract) is from this state. Bangladeshi law should govern this dispute.

■ Haywin argues that New York has a strong interest in protecting third party beneficiaries and that the application of Bangladeshi law would violate New York's public policy. This argument is unpersuasive. The law regarding third party beneficiaries does not represent such a fundamental public policy that it would justify disregarding the normal choice of law analysis. " '[R]esort to the public policy exception should be reserved for those foreign laws that are truly obnoxious' to the laws of [New York]." *Finucane v. Interior Const. Corp.,* 264 A.D.2d 618, 695 N.Y.S.2d 322, 325 (1st Dept.1999), *quoting, Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 927, 612 N.E.2d 277 (1993). Bangladesh's law here certainly does not rise to this level. Because Bangladeshi law applies in this case, and it does not recognize third party beneficiaries, Haywin's first cause of action is dismissed for failure to state a claim upon which relief may be granted.

■ The issue remains, however, whether Bangladeshi law would permit Haywin's claim that IFIC is liable as a successor-in-interest to Azmat. Haywin's expert contends that because IFIC expressly contracted to assume the responsibility for all past and future liabilities of Azmat, that IFIC can be liable to Haywin, even though the latter was not a party to the contract. (Rahman Aff. ¶¶ 1, 2.) IFIC's expert argues in response that under the law of Bangladesh, corporations are separate and distinct entities, even when one is wholly owned by the other. (Zahir Aff. at 4.) In support of his contention, IFIC's expert cites to decisions where courts refused to impute liability to a parent corporation. *See, e.g., A.S.A. Nur v. Registrar,* (1981) BLD(AD) 202.

■ IFIC's analysis misses the mark. The question is not whether a parent company will always be responsible for the liabilities of its wholly owned subsidiary. Indeed, New York recognizes that a parent company generally will not be liable for the debts of a subsidiary. Successor liability under New York law only attaches in certain exceptional circumstances. "In general, successor liability will lie [under New York law] when: (1) there is an express or implied agreement to assume the other company's debts and obligations; (2) the transaction was fraudulent; (3) there was a de facto merger or consolidation of the companies; or (4) the purchasing company was a mere continuation of the selling company." *American Buying Ins. Serv. v. S. Kornreich & Sons,* 944 F.Supp. 240, 249 (S.D.N.Y.1996) (Kaplan, J.). *See also, Old Republic Ins. Co. v. Hansa World Cargo Service,* 170 F.R.D. 361, 376 (S.D.N.Y.1997) (Edelstein, J.); *GG Managers, Inc. v. Fidata Trust Co. New York,* 215 A.D.2d 241, 626 N.Y.S.2d 488, 490 (1st Dept.1995).

Arguably, the first type of successor liability found under New York law (i.e. where one company expressly assumes liability for the debts of the other) may not apply in this case, because of Bangladeshi law regarding third party beneficiaries.[1]

1. This conclusion is far from obvious, however- er, especially in light of the argument by

IFIC has not demonstrated, however, that the other situations imposing successor liability under New York law may not impose similar liability in Bangladesh. Further, it is reasonable that they should. Under Bangladeshi law, assuming Azmat is still a functioning and independent corporation, Haywin could sue Azmat to collect on its debt and Azmat could then seek contribution from IFIC pursuant to the deed of agreement. This is the awkward, though still fair and reasonable, result of denying standing to third party beneficiaries. A more troubling hypothetical, however, is where Azmat liquidates its assets by selling them to IFIC, thereby leaving only a shell corporation. Without successor liability Azmat could escape its obligations by rearranging its corporate structure. It would be irrational for Bangladeshi courts to sanction such a result, and the cases cited by IFIC's expert do not suggest that they do. In fact, one of the Bangladeshi opinions cited by IFIC's expert specifically refers to exceptional circumstances which might justify holding a parent corporation liable. *See A.S.A.*, (1981) BLD(AD) at 206 ("[The acts of the subsidiary] are not the acts of the parent company, and this parent company is not responsible for [the subsidiary's] acts and defaults, *in the absence of special provisions in some contract between the parties.*" (emphasis added)).

■ "In New York, it is required that a party wishing to apply the law of a foreign state show how that law differs from the forum state's law. Failure to do so results in the application of New York law." *Independent Order of Foresters v. Donaldson, Lufkin & Jenrette, Inc.*, 919 F.Supp. 149, 152 (S.D.N.Y.1996) (Batts, J.). *See also, Loebig v. Larucci*, 572 F.2d 81 (2d Cir.1978) (applying New York law in a case governed by German law because

German law was not sufficiently proved); *Read v. Lehigh Valley R. Co.*, 284 N.Y. 435, 441, 31 N.E.2d 891 (1940) (holding that even though Pennsylvania law governed the case, it was not sufficiently proved, so the court could proceed upon the assumption that "the law of the foreign jurisdiction accords with the law of New York upon the subject"). Because IFIC has not demonstrated that Bangladeshi law regarding successor liability is significantly different from New York law, the court will presume that they are the same.

■ Whether the transfer of control of Azmat is sufficient to impose liability on IFIC as a successor-in-interest is obviously a matter which will require additional factual information. And while IFIC downplays the expansiveness of IFIC's liability by making certain arguments regarding the circumstances surrounding the transaction, those arguments go beyond the scope of a motion to dismiss. For this motion, the court need only determine whether, construing the pleadings liberally in favor of the plaintiff, the complaint states a cause of action. The court finds that it does.

■ Defendant IFIC also asks the court to set aside the temporary restraining order issued by the New York Supreme Court freezing IFIC's New York bank accounts. In this case, an order of attachment was never issued because IFIC removed the case on the same date that the state court was to entertain a hearing on the order to show cause, November 13, 2000. *Haywin*, 137 F.Supp.2d at 437. Through a stipulation and order signed on November 21, 2000, the temporary restraining order was extended pending further action by this court. *Id.*

Haywin's expert specifically to the contrary.

(Rahman Aff. ¶ 1.)

Orders of attachment are governed by Rule 64, F.R. Civ. P., which states that they "are available under the circumstances and in the manner provided by the law of the state in which the district court is held . . . ." "To obtain an order of attachment [under New York law], the movant must show 'that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in [N.Y. CPLR] section 6201 exist, and that the amount demanded from the defendants exceeds all counterclaims known to the plaintiff.'" *Haggiag v. Brown,* 728 F.Supp. 286, 293 (S.D.N.Y.1990) (Leisure, J.), *quoting* N.Y. CPLR § 6212(a).

In the April 9, 2001 opinion, the court deferred decision on this matter until it could make a ruling on the choice of law issue which would necessarily inform the plaintiff's probability of success on the merits. *Haywin,* 137 F.Supp.2d at 437–38. Based upon the law applicable to this case, and the allegations regarding the transaction between Azmat and IFIC, Haywin enjoys a probability of success on the merits under a theory of successor liability. Furthermore, N.Y. CPLR § 6201(1) is applicable in this case, namely that IFIC "is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." (Compl. ¶ 2, Brothers Dec. 11, 2000 Aff. ¶ 2.) Finally, in light of the fact that the property (funds in a bank account) is easily removed from this jurisdiction, an order of attachment seems especially appropriate.

IFIC argues for the first time in its most recently submitted papers that the bond amount posted by Haywin as security for the temporary restraining order, $90,000.00, is insufficient to cover the damage done to IFIC through this attachment. (Def.'s 2nd Mem. of Law at 2.) IFIC has not submitted an affidavit quantifying the harm which it is incurring as a result of the temporary restraining order, or that it would incur should this court enter an order of attachment under the same terms as the temporary restraining order issued by the New York state court. IFIC may offer an affidavit, accompanied by a memorandum of law, substantiating its argument that the court should modify the terms of the temporary restraining order. It should make that submission, on notice, before the close of business on June 22, 2001, and Haywin may respond, if it wishes, before the close of business on June 29, 2001. If IFIC decides not to pursue this option, then Haywin should submit, before the close of business on June 29, 2001, a proposed order of attachment to the court containing the terms of the earlier temporary restraining order. In the meantime, the temporary restraining order issued by the Supreme Court of the State of New York remains in full effect.

## CONCLUSION

IFIC's motion to dismiss is granted as it relates to count one of the complaint (the third party beneficiary claim) and denied as it relates to count two (the successor liability claim). If it desires, Haywin may refile its motion for summary judgment (upon which the court previously deferred decision, *see Haywin,* 137 F.Supp.2d at 433, n. 1), establishing a new schedule for responsive and reply papers.

**IT IS SO ORDERED.**